Aurora **DIAZ**, as Administratrix of the Estate of Juan Diaz, deceased, Plaintiff-Appellee,

v.

**LYKES BROS. STEAMSHIP CO., Inc.,** Defendant-Appellant.

**No. 219, Docket 23639.**

United States Court of Appeals Second Circuit.

Argued Jan. 12, 1956.

Decided Jan. 27, 1956.

Tompkins, Boal & Tompkins, New York City, by Arthur M. Boal, New York City, for appellant.

Harry D. Graham, New York City, for appellee.

Before CLARK, Chief Judge, and FRANK and LUMBARD, Circuit Judges.

FRANK, Circuit Judge.

Plaintiff, wife and administratrix of Juan Diaz, deceased, brought this suit under the Jones Act, 46 U.S.C.A. § 688, for wrongful death and for decedent's pain and suffering. At the close of the evidence, the judge denied defendant's motion for a directed verdict. The jury returned a verdict for plaintiff in the sum of $15,000. The judge denied defendant's motion to set aside the verdict and to direct a new trial; the judge then entered judgment on the verdict. There was evidence from which the jury could reasonably have found the following:

Decedent was employed by defendant as a cook on defendant's vessel, S.S. Sue Lykes. On a voyage to Cherbourg, decedent complained of a chest cold.

As the vessel approached the Cherbourg harbor, the third mate, in the course of his duties as medical officer, examined decedent. The mate observed that decedent had a high temperature, that his pulse was quite slow, and that he had difficulty in breathing. When the ship was in the harbor, the mate reported these facts to the captain and suggested that decedent be taken to a doctor. The ship was equipped with radio and had a radio operator on board. But no attempt was made to communicate with the shore to provide medical care. Not until eight hours after the mate's report to the captain, was decedent sent ashore in the company of Ferlita, a member of the crew, who was instructed by the captain to see the ship's agent, La Porte, to arrange for medical service. Ferlita, with Diaz's arm around his neck, assisted him down the gangway and then, by foot, proceeded to the agent's car which was parked about half a block from the ship. The agent then took them down to his office where they spent an hour waiting for the agent to make arrangements, during which time Diaz kept on gasping and complaining of bad pains. Ferlita then told the agent that if he would direct Ferlita as to the way to the hospital, he would carry Diaz there. La Porte, Ferlita and Diaz, with Diaz resting upon Ferlita's shoulder, then proceeded, by foot, to a clinic about 2½ blocks away from the agent's office; on the way, Diaz had to stop, sit down to rest, and was gasping heavily. La Porte told Ferlita to stay with Diaz and left them. The doctor of the clinic gave Ferlita a slip of paper written in French which he did not understand. By foot again, with Diaz supported on one shoulder, they walked back the 2½ blocks to the agent's office where Ferlita gave the slip to La Porte. La Porte then made arrangements for Diaz's entry into a hospital and, about 15 minutes later, they all went by taxi to the Pasteur Hospital. At the hospital, La Porte left Diaz and Ferlita with instructions to Ferlita to hand the slip to the nurse, which he did. The nurse did not speak English, but, with her finger, motioned Diaz and Ferlita to follow her, whereupon with Ferlita assisting him, Diaz climbed two flights of stairs and Ferlita placed him in the hospital bed.

Upon entry into the hospital, Diaz was diagnosed as showing symptoms of double congestion of the lungs, complicated by an asystolic condition, both of which affections were superadded to an asthmatic state. Notwithstanding the treatment given to him at the hospital, Diaz died the following day.

At the trial, a physician, who qualified as an expert, testified as to the nature and progress of decedent's illness and the probability that decedent's death resulted from the events of the day before his death.

■ 1. The decedent's symptoms were such as to impress upon an ordinary layman the need for immediate medical attention. The jury could reasonably have concluded that defendant was guilty of negligence. There was no error in receiving the expert's testimony concerning the probable result of the delay, since that testimony had a bearing on the issue of causation.

■ Defendant complains of error in the award of damages, because the decedent, although not divorced or legally separated from plaintiff, for several years previous to his death had not contributed to the support of plaintiff or their children, and because, while plaintiff could have compelled such support by legal proceedings, she had not tried to do so. We see no error, especially since there is uncontradicted testimony in the record that three years before his death, when decedent came to New York, he had lived at home with his wife for two or three weeks, and had then promised that he would mend his ways by sending her money and by arranging for her and the children to join him when he returned to Miami, Florida. Civil v. Waterman S.S. Corp., 2 Cir., 217 F.2d 94, 99. The proof of decedent's earnings sufficed to sustain the amount of the award.

Affirmed.